IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

LEWIS POWELL,

                    Plaintiff,

    v.

CAROLYN COLVIN,
Commissioner of Social Security,

                    Defendant.

OPINION AND ORDER

15-cv-789-slc

On June 11, 2013, at the age of 55, plaintiff Lewis Powell filed an application for a period of disability and disability insurance benefits under sections 216(I) and 223(d) of the Social Security Act. Powell alleged that he had been disabled since March 8, 2008 because of limitations imposed by a number of impairments and conditions, including gastritis, osteomyelitis, florid cemento-osseous dysplasia and diabetes. After the local disability agency twice denied his claim, Powell had a hearing before an administrative law judge ("ALJ"). On June 15, 2015, the ALJ issued a decision finding that Powell was not disabled at any time between his alleged onset date and December 31, 2013, which is the date on which his eligibility for disability insurance expired. The Appeals Council subsequently denied Powell's application for review, making the ALJ's decision the final decision of the Commissioner.

Powell's claim is before this court for judicial review pursuant to 42 U.S.C. 405(g). Powell argues that the ALJ failed to properly weigh the medical opinions, and made an erroneous credibility determination. As explained below, I disagree. The ALJ issued a thorough decision that accounted for all the evidence of record and he gave sound reasons for accepting some evidence and rejecting other evidence. Under these circumstances, this court has no choice but to affirm the Commissioner's decision.

The following facts are drawn from the Administrative Record ("AR"), filed with the Commissioner's answer in this case:

## FACTS

### I. Medical History

Lewis Powell suffers from a host of medical problems.  He has been diagnosed with diabetes, hypertension, hyperlipedemia and asthma, although he appears to concede that these conditions are under control with medication and do not present significant work-related limitations.[1]  Powell also has been diagnosed with florid cemento-osseous dysplasia, a disorder that causes decreased blood supply to the jaws which in turn can cause periodic inflammation and infection of the jaw bone and surrounding teeth.  During a period of inflammation, Powell may have a difficult time opening his mouth, making it difficult to chew or talk.  The condition is treated with antibiotics and debridement of the infected bone, if necessary.

Powell's primary work-related problem is pain and swelling in his legs.  Powell has a history of four fractures of his left tibia, the first in 1979.  Powell also has poor circulation in his legs, more so on the left than the right, which routinely causes his legs to swell and discolor.  During an extensive review of his medical history with his dentist in March 2013, Powell reported that his legs had been this way since the last leg surgery in 1982.  AR 319.

---

[1] Powell also has thalassemia, a genetic blood disorder in which the body makes an abnormal form of hemoglobin, which is the protein molecule in red blood cells that carries oxygen.  The disorder results in excessive destruction of red blood cells, which can lead to anemia.  *See* http://www.healthline.com/health/thalassemia#Causes2.

2

Despite this list of medical conditions, Powell's medical records are sparse, due mainly to his lack of medical insurance. Most of Powell's medical care during the relevant time period was provided by Dr. James Collins, who saw Powell approximately twice a year from August 2010 to October 2012. AR 299-312. Dr. Collins saw Powell primarily for blood pressure checks and medication refills. At these visits, Powell generally denied having any significant problems apart from chronic left leg pain. At an annual exam with Dr. Collins in March 2012, Powell reported continued chronic pain in his left leg due to his 1979 fracture but otherwise reported feeling well, denying any changes in bowel habits or any myalgias or muscle weakness. On exam, Dr. Collins noted positive edema in both legs with the left greater than the right, with venous stasis changes in the left leg. Powell's peripheral pulses were intact and symmetrical. Dr. Collins noted that Powell's blood pressure was under good control on his present regimen and there was no evidence of asthma. He also noted that Powell was "unable to stand due to progressive venous stasis of the Lt > Rt leg." AR 302.

At a follow-up visit with Dr. Collins in October 2012, Powell reported no significant changes in his condition. Dr. Collins refilled Powell's medications and recommended support hose for Powell's venous stasis. He noted that Powell's clinical condition was acceptable given his various medical issues, but "[t]here are areas that need further & ongoing evaluation." AR 296. Dr. Collins did not specify what those areas were or what evaluation was needed.

There are no further treatment records from Dr. Collins. However, on May 11, 2015, he wrote a letter stating that Powell had multiple medical conditions, "all of which make it difficult for him to sit or stand for prolonged periods of time and maintain a regular job." AR 347.

3

From March to June 2013, Powell was seen by Dr. Kimberly Pingel, a dentist, for a flare-up of his florid cemento dysplasia. Powell was treated with antibiotics and debridement of the left mandible. On May 15, 2013, Dr. Pingel noted that Powell was progressing well with reduced swelling. On June 19, 2013, however, Dr. Pingel noted that it was possible that another infection was beginning. Dr. Pingel wanted to refer Powell to an oral surgeon for treatment and follow up, but noted that Powell would need assistance from a social worker because he did not have insurance. There are no further medical records documenting that Powell had any further problems or treatment for this condition.

In connection with his application for disability benefits, Powell was evaluated for left leg pain by Brian Allen, D.O., on December 23, 2013. Powell complained of continuous swelling and erythema in both legs along with small ulcers on his legs. Powell also reported that he had suffered a back injury when he fell off a bike going approximately 20 MPH. In addition, Powell complained of swelling and pain in his left mandible, and sleep apnea. Powell reported being able to sit for two to three hours, stand for 20 minutes and walk for 15 minutes. He said he had difficulty with lifting, walking and climbing stairs and that he used a cane on bad days.

On physical exam, Powell was 5'10" tall and weighed 261 pounds. His left mandible had a one centimeter nodule with some swelling and Dr. Allen detected some tenderness in his lower spine over the L4-L5 area. Examining Powell's lower extremities, Dr. Allen noted multiple four- to six-millimeter ulcers over the back of Powell's calves, with erythema and non-pitting edema of the skin over both calves extending from the knee down to the ankle. Powell's pulse was good in all four extremities. On neurological testing, Powell limped, favoring his left leg. Powell was unable to do tandem walking, walk on his heels or toes, hop on either leg or complete a squat,

4

and he needed to brace to get up from the chair and off and on the examination table.  Powell's sensation and strength were normal.

Dr. Allen's impression was that Powell had venous insufficiency of the left and right calf secondary to thalasssemia minor disorder, low back pain that was either caused by degeneration of the facet joints or was myofascial in nature, a mandibular abscess secondary to thalassemia and a history of left tibial-fibula fracture x4 with secondary osteomyelitis.

On January 22, 2014, Dr. Luis Zuniga, a non-examining physician working for the local disability determination service, reviewed Powell's medical records and assessed Powell ability to perform work-related tasks during a normal work day.  Zuniga concluded that Powell could lift 20 pounds occasionally and 10 pounds frequently, stand or walk for four hours, sit about six hours, climb ramps, stairs, ladders or scaffolds occasionally, balance, stoop, kneel, crouch or crawl occasionally and should avoid concentrated exposure to extreme temperatures or fumes, odors, dusts or gases. A second state agency physician, George Walcott, M.D., reviewed the record on May 29, 2014 and made findings similar to Dr. Zuniga's, although Walcott thought Powell could stand or walk for up to six hours a day and had fewer postural limitations.

Powell's eligibility for disability insurance benefits expired on December 31, 2013.  There are a number of medical reports in the record generated after this cutoff date, including medical records from Dr. Hillard Salas, a primary physician with whom Powell established care in August 2014.  AR 367.

## II. Hearing Testimony

Powell had a hearing before an ALJ on June 2, 2015.  Powell, who was represented by a lawyer, testified as follows:

Powell lives in a single-family home with his wife, his father-in-law and two dogs.   His wife works full time.  Powell helps to take care of his father-in-law, preparing his meals, emptying his urinal and helping him to the car.  Powell also takes out the garbage, pays bills and does dishes and laundry.  He has a driver's license and drives about four days a week, to the grocery store, doctor's appointments and the gas station.  Powell is able to take care of his own personal hygiene, although he often uses a chair in the shower.

Powell has a bachelor's degree in theology.  His last job was product sales at a call center where he worked four hours a day, three days a week until December 31, 2014.  Powell said he left the job voluntarily because of irritable bowel problems and migraines, with the intention that he would go back in September 2015 if he was feeling better.  AR 55.  Reviewing his past work history, Powell testified that from 1999-2001, he worked at AT&T processing bill payments, but left that job to move in with his wife's father in Wisconsin to help take care of his farm.  From 2004-2008 Powell returned to work for a different company in Illinois doing the same type of bill processing work, but left there because the commute between Wisconsin and Illinois was difficult, especially because he has sleep apnea.  AR 57.  Powell said the bill processing jobs were performed primarily sitting at a work station.  AR 58. He said he had his leg problems at that time but they were "not as bad."  *Id*.  From 2009 to 2012, Powell helped his wife run a noodle restaurant and also took care of his wife's father as well as his own father, who had suffered a severe stroke.  AR 64.

6

Powell testified that he no longer could work full time for a number of reasons.  First, he has to sleep sitting in a chair because of sleep apnea and acid reflux, which results in him not getting a good night's sleep.  Powell's legs get swollen and painful if he sits for too long, and he cannot stand for more than 20 minutes at a time or walk for more than 40 minutes at a time. However, Powell explained that if he sat down and elevated his leg after walking for 40 minutes, then he could walk again for awhile. AR 67.  Powell also suffers from irritable bowel symptoms and often needs to use the restroom on an urgent basis.  In addition, Powell suffers from unpredictable migraine headaches, which can occur as often as five times a month, although Powell explained that he can manage the pain if he takes aspirin or Tylenol immediately when his symptoms start.  AR 69.

Powell testified that he tries not to sit longer than two hours at a time without getting up and moving around.  If he does that, then he can return to sitting.  As for standing, he can stand for 10 minutes without problems so long as he takes a break and sits down to rest.  In response to a question from the ALJ, Powell said he was not having any problems with his leg even though he had been sitting for an hour and 20 minutes at the hearing.  When asked by the ALJ whether he could return to the bill processing jobs he had in the past, he replied that he could not because it was too painful.  AR 89.

## III. The ALJ's Decision

On June 15, 2015, the ALJ issued a decision denying Powell's application for social security benefits.  The ALJ necessarily focused on the time period between March 8, 2008 (the

alleged onset date) and December 31, 2013, which was the last date on which Powell had disability insurance coverage under the Social Security Act.

Evaluating Powell's claim in accordance with the five-step process set out by the Social Security regulations, 20 C.F.R. § 404.1520(a), the ALJ determined at steps one through three that although Powell had the severe impairments of chronic venous insufficiency, obesity, sleep-related breathing disorders and a spinal disorder, the evidence failed to establish that the impairments singly or in combination were equal in severity to any impairment that the Commissioner considers to be severe enough to prevent a person from doing any gainful activity. Therefore, the ALJ went on to evaluate Powell's residual functional capacity, which is the commissioner's term for what a person can do both physically and mentally on a sustained basis in spite of limitations caused by his impairments.  20 C.F.R. §§ 404.1520(3); 404.1545.

At this step, the ALJ concluded that Powell retained the residual functional capacity to perform a modified level of light work.  Specifically, the ALJ found that Powell was able to:  lift or carry up to 20 pounds occasionally and 10 pounds frequently; stand and/or walk for at least four hours of an 8-hour day but not more than 30 minutes at a time; sit 6 hours a day but not more than 2 hours at once; and occasionally climb ramps or stairs, balance, stoop, kneel, crouch or crawl.  The ALJ also found that Powell should never climb ladders, ropes or scaffolds and should avoid concentrated exposure to workplace hazards and moderate exposure to pulmonary irritants.

In reaching his conclusions about Powell's residual functional capacity, the ALJ gave some weight to the opinions of the non-examining state agency physicians who reviewed Powell's medical record, particularly that of Dr. Zuniga.  The ALJ gave little weight to a number of

medical source statements submitted by Powell, finding that they either failed to offer specific evidence of Powell's residual functional capacity or were inconsistent with the record as a whole. In addition, the ALJ found that Powell's statements regarding the intensity, persistence and limiting effects of his symptoms were not fully credible for a variety of reasons.  (These aspects of the ALJ's decision will be discussed in greater detail below.)

Relying on the testimony of a vocational expert who testified at the hearing, the ALJ concluded at the fourth step of the sequential evaluation that Powell's residual functional capacity would not preclude him from performing his past relevant work as a billing clerk and a customer service representative, both of which were semiskilled occupations performed at the sedentary level of exertion.  Accordingly, the ALJ found that Powell was not disabled at any time through December 31, 2013, which was the last date on which Powell had disability insurance coverage under the Act.  That decision became the final decision of the Commissioner when the Appeals Council denied Powell's request for review.

Powell now appeals the administrative law judge's decision pursuant to 42 U.S.C. § 405(g).  He raises two arguments in favor of reversal:  1) the ALJ erred in failing to give proper weight to the opinion of Powell's treating physician, Dr. Salas; and 2) the ALJ's credibility determination is flawed.  Neither of these arguments provides a sufficient basis to reverse the Commissioner's determination.

## OPINION

### I.  Standard of Review

A federal court reviews an administrative law judge's decision deferentially and will uphold the denial of benefits unless it is not supported by substantial evidence or is based on an error of law.  42 U.S.C. § 405(g); *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  A reviewing court cannot reconsider facts, re-weigh the evidence, decide questions of credibility or otherwise substitute its own judgment for that of the administrative law judge.  *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000).  Where conflicting evidence allows reasonable minds to differ about whether a claimant is disabled, the responsibility for that decision falls on the commissioner, or the commissioner's designate, the [administrative law judge]." *Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990) (quoting *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987) (citation omitted).

### II.  Dr. Salas's Opinion

Powell argues that the administrative law judge erred in rejecting the opinion of Dr. Hillard Salas, who treated Powell between August 2014 and December 2015.  Dr. Salas completed a written report on May 14, 2015.  On the report, Dr. Salas found that Powell was capable of the lifting and carrying requirements of light work but would not be able to sit or stand/walk for even 2 hours a day and would be absent more than 3 times per month.  It is undisputed that an individual with these limitations would be unable to perform any gainful

activity on a regular and sustained basis, and therefore would meet the criteria of disability under the Social Security Act.

Although an administrative law judge must consider all medical opinions of record, he is not bound by those opinions. *Haynes v. Barnhart*, 416 F.3d 621, 630 (7th Cir. 2005). "[T]he weight properly to be given to testimony or other evidence of a treating physician depends on circumstances." *Hofslien v. Barnhart*, 439 F.3d 375, 377 (7th Cir. 2006). When a treating physician's opinion is well supported and no evidence exists to contradict it, the administrative law judge has no basis on which to refuse to accept the opinion. *Id.* However, when the record contains well supported contradictory evidence, the treating physician's opinion "is just one more piece of evidence for the administrative law judge to weigh," taking into consideration the various factors listed in the regulation. *Id.* (citing 20 C.F.R. § 404.1527(d)(2)). These factors include the number of times the treating physician has examined the claimant, whether the physician is a specialist in the allegedly disabling condition, how consistent the physician's opinion is with the evidence as a whole and other factors. 20 C.F.R. § 404.1527(d)(2). If the administrative law judge discounts the opinion of a claimant's treating physician, he must offer "good reasons" for doing so. *Larson v. Astrue*, 615 F.3d 744, 751 (7th Cir. 2010); *Bauer v. Astrue*, 532 F.3d 606, 608 (7th Cir. 2008).

In his decision, the ALJ explained that he was rejecting Dr. Salas's report for the following reasons: 1) Salas's conclusions were inconsistent with statements that Powell made to the consulting physician, Dr. Allen, who examined Powell in September 2013; 2) Salas's conclusions were inconsistent with Powell's testimony at the hearing that he tries to limit his periods of sitting at one time to two hours and that, if he gets up and moves around for five to 10 minutes,

then he can return to sitting without difficulty; and 3) Salas's conclusions were inconsistent with Powell's performance and presentation at the hearing, where he was able to sit through the entire 90+ minute hearing with no evidence of pain or discomfort while testifying.  The ALJ also noted that, on the form used to express his opinion, Dr. Salas reported that the limits he ascribed to Powell arose on May 14, 2015, the very date the form was completed and well past claimant's date last insured.  Although the ALJ recognized that this probably was an error and stated that he was not rejecting Dr. Salas's opinion on that basis, he noted that the error suggested that Salas was not being careful when he completed the form.  All told, the ALJ concluded that Salas's "very recent" opinion clearly overstated Powell's current limits and failed to provide any meaningful evidence as to what Powell's limits were during the time period in question.

These were valid reasons to reject Dr. Salas's opinion.  As an initial matter, the ALJ could have rejected Dr. Salas's opinion in its entirety based simply on the fact that Dr. Salas did not appear to be offering an assessment of Powell's abilities during the relevant time period prior to his date last insured of December 31, 2013.  Indeed, it does not appear that Dr. Salas even began treating Powell until August 4, 2014, nearly eight months after his date last insured.  Because nothing in Dr. Salas's report purports to offer a retrospective assessment of Powell's functional limitations, the ALJ could have rejected the entire report as irrelevant.

Instead, the ALJ gave Powell the benefit of the doubt and assumed that Dr. Salas's opinion was relevant to the time period in question.[2]  Even so, however, the ALJ cited valid

---

[2] Powell criticizes the ALJ for making this assumption and argues that he should have recontacted Dr. Salas or consulted a medical expert for clarification.  Br. in Supp., dkt. 9, at 15.  This argument is illogical: the ALJ's assumption that Dr. Salas meant to opine about Powell's limitations during the relevant time period worked to Powell's benefit, not his detriment.

reasons for rejecting it, namely, Powell's inconsistent statements to Dr. Allen and at the hearing, which indicated that Powell was not as limited as Dr. Salas had found.  As the ALJ noted, Powell told Dr. Allen on December 23, 2013 that he could sit for two to three hours, stand for 20 minutes and walk for 15 minutes.  AR 326.  Similarly, Powell testified at the hearing that he could sit for at least two hours at a time, and then return to sitting after getting up and walking around for a bit; consistent with this testimony, the ALJ observed—and Powell acknowledged— that he had no difficulty sitting for more than 90 minutes at the hearing.  These statements and observations are inconsistent with Dr. Salas's opinion that Powell could sit for less than two hours per day total and for only 30 minutes at one time.

Powell argues that the ALJ's analysis is flawed because the ALJ failed to consider of all the factors listed in the regulation.  I disagree.  Although an ALJ is supposed to consider all of the factors in 20 C.F.R. § 404.1527(c), he need not explicitly discuss each one in his opinion so long as he otherwise articulates why it is inconsistent with the record. *See Schreiber v. Colvin*, 519 Fed. Appx. 951, 959 (7th Cir. 2013) (rejecting claimant's argument that ALJ erred because he did not specifically address each factor set forth in 20 C.F.R. § 404.1527, and finding that "while the ALJ did not explicitly weigh each factor in discussing [the treating physician's] opinion, his decision makes clear that he was aware of and considered many of the factors . . ."); *Henke v. Astrue*, 498 Fed. Appx. 636, 640 n. 3 (7th Cir. 2012) ("The ALJ did not explicitly weigh every factor [in 20 C.F.R. § 404.1527] while discussing her decision to reject [the treating physician's] reports, but she did note the lack of medical evidence supporting [the treating physician's] opinion . . . and its inconsistency with the rest of the record. . . . This is enough"); *Elder v. Astrue*, 529 F.3d 408, 416 (7th Cir. 2008) (ALJ need only "minimally articulate" his reasons for crediting or rejecting

a treating physician's opinion).  Moreover, Powell fails to make a persuasive argument why any of the other factors would have supported a different outcome.  Dr. Salas is a general physician, not a specialist.  He followed Powell mainly for his asthma, hypertension, hyperlipedemia and hyperglycemia and he examined Powell only a handful of times before offering his restrictive assessment of Powell's work abilities.  Thus, the other factors in the regulation do not support a conclusion that Dr. Salas's opinion deserved more weight than the ALJ gave it.

Powell argues that the ALJ ignored the fact that Dr. Salas's conclusion was consistent with statements made by two other doctors, Dr. James Collins and Dr. Michael Karakourtis.  As detailed above, Dr. Collins treated Powell for high blood pressure and asthma four times between August 2010 and October 2012.  On May 11, 2015, he wrote a letter stating that Powell had been a patient since 2009 and had "multiple medical conditions including sleep apnea, cervical spine disease following a motor vehicle accident and trauma to his left leg subsequent to a fall all of which make it difficult for him to sit or stand for prolonged periods of time and maintain a regular job."  As the ALJ noted, however, this statement is vague and conclusory in that it fails to specify what limitations Dr. Collins thought Powell's had.  AR 31.  As such, there is no basis to conclude that Dr. Collins's opinion was consistent with Dr. Salas's.

Dr. Karakourtis is a dentist who appears never to have treated Powell during the relevant time period.  On May 15, 2015, he provided a statement indicating that Powell has a chronic condition called florid cemento-osseous dysplasia, a disease that causes periodic inflammation and infection of the jaw bone and surrounding teeth, which is treated by surgically removing the involved necrotic bone and associated tooth or teeth.  The ALJ gave this statement little weight, noting that it did little to address Powell's work-related abilities or to establish that exacerbations

were so frequent or the treatments so intense that they would prevent Powell from maintaining competitive employment.   AR 24.   Substantial evidence in the record supports the ALJ's conclusion.  As he noted, the records during the relevant time period showed that Powell had only one period of inflammation in March 2013, during which he had swelling and pain on the left side of his jaw, particularly when he opened his mouth.   Powell was started on antibiotics and underwent a debridement, then had returned almost to normal within six weeks.  At the hearing, Powell testified that he had not had another significant infection since that time.   AR 80. Contrary to Powell's contention, neither Dr. Karakourtis's statement nor the actual medical evidence concerning Powell's chronic jaw condition is consistent with Dr. Salas's opinion that Powell would miss work more than 3 times per month.

Next, Powell argues that the ALJ misconstrued his testimony by finding that it was inconsistent with Dr. Salas's opinion.  Powell points out that he testified that when he previously worked a job that required him to sit most of the time for a four-hour shift, he was limping by the end of his shift and his legs were swollen.  AR 87.  Powell also notes that he testified that when he sits at home, he sits with his legs elevated.  AR 74.  However, Powell also testified that he was not allowed breaks at his previous job, and that if he was allowed to get up and move around after sitting for two hours, then his symptoms were better.  AR 88.  Further, when asked by the ALJ how he was feeling after having sat through nearly 90 minutes of the hearing without a break, Powell testified that he was not having any problems.  *Id*.  The ALJ reasonably found that this testimony conflicted with Dr. Salas's conclusion that Powell was able to sit for no more than two hours total and for only 30 minutes at time.

Finally, Powell argues that the ALJ ignored other medical evidence that shows that Powell suffered from "persistent, disabling pain" and had difficulty sitting, standing and walking.  Br. in Supp., dkt. 9, at 13-14.  As the Commissioner points out, however, several of the records to which Powell cites have no bearing on the ALJ's conclusion because they were not before the ALJ, or they pertained to the time period after Powell's date last insured, or both.  Br. in Opp., dkt. 10, at 12.  Looking only at the evidence that was before the ALJ shows that he considered all of it and explained how it factored into his decision.  None of the records establish that Powell was as limited as Dr. Salas had found.  Because the ALJ considered all of the important evidence of record and articulated his reasons for declining to give much weight to Dr. Salas's opinion, this court cannot deem his determination to be incorrect.

## III.  Credibility

As part of his RFC assessment, the ALJ concluded that Powell's assertions regarding the intensity, persistence and limiting effects of his symptoms were not fully credible.  Because the ALJ is in the best position to determine a witness's truthfulness and forthrightness, the court will not overturn an ALJ's credibility determination unless it is patently wrong.  *Shideler v. Astrue*, 688 F.3d 306, 310-11 (7th Cir. 2012).  The ALJ's decision must, however, provide "specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight

16

the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96–7p, 1996 WL 374186, at *2[3]; *see also Pepper v. Colvin*, 712 F.3d 351, 367 (7th Cir. 2013).

Here, the ALJ cited the following reasons for his conclusion that Powell's subjective complaints were not entirely credible:

- Powell's daily activities—helping his wife care for his father-in-law, walking the dog on a good day, preparing quick and easy meals one to two times a day, occasionally using the riding lawn mower, doing laundry and picking up around the house, driving, grocery shopping once a week, and managing his personal hygiene and care—which the ALJ found were "not limited to the extent one would expect, given the complaints of disabling symptoms and limitations;"

- Powell stated that his limitations had been present since 1979, yet he was able to work above the substantial gainful level for several years after that date;

- Powell's statements to Dr. Allen and at the hearing indicated that he could sit, stand and walk consistent with the ALJ's residual functional capacity finding;

- Powell was able to sit through the entire hearing with no reported or obvious evidence or pain or discomfort, which, although not "a conclusive indicator of the claimant's overall level of pain or his functioning on a day-to-day basis," was entitled to some weight;

- there was no objective medical evidence or reports to providers to support Powell's testimony that he suffers from frequent migraine headaches with blurry vision and frequent falls with loss of strength in his legs; and

- overall, the objective medical evidence did not support the severe limitations Powell alleged.

---

[3] The Agency recently replaced SSR 96-7p with a new ruling, SSR 16-3p, Evaluation of Symptoms in Disability Claims, 81 FR 14166 (March 16, 2016). The substantive aspects of SSR 16-3p do not apply retroactively, so SSR 96-7p still governs this case.

Powell raises three objections to the ALJ's credibility assessment: 1) the ALJ focused on an isolated report in the record to find that Powell's condition had remained virtually unchanged since 1979, while ignoring other evidence indicating that Powell's pain and swelling in his legs had worsened over time; 2) the ALJ erred in failing to consider Powell's reasons for not obtaining medical treatment; and 3) the ALJ misrepresented the record in finding that Powell admitted to certain abilities consistent with the residual functional capacity. I have already rejected the third of Powell's arguments in the preceding section. As for the first two, only the first has some merit. The second—that the ALJ should have considered Powell's reasons for not obtaining medical treatment—misses the mark because there is nothing in the ALJ's decision that suggests that he mentioned Powell's lack of treatment as a factor in his credibility analysis. True, the ALJ did mention gaps in medical treatment during his review of the medical evidence, but he did not cite a lack of treatment as a reason for finding Powell not credible.

As for Powell's argument that the ALJ ignored evidence in the record indicating that Powell's condition had worsened since 1979, it is well-settled that an ALJ need not discuss every piece of evidence in the record and is prohibited only from ignoring an entire line of evidence that supports a finding of disability. *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009). Here, the evidence that Powell says the ALJ ignored does not support a finding of disability, but shows only generally that Powell's condition has worsened since 1979. In any case, even if I disregard the ALJ's finding concerning the stability of Powell's condition over time, I still would uphold his credibility determination. *See, e.g., McKinzey v. Astrue*, 641 F.3d 884, 890-91 (7th Cir. 2011) (although some of ALJ's reasons for discounting plaintiff's credibility were flawed, ALJ's finding that she had exaggerated her symptoms to treating physician adequately supported adverse

18

credibility finding); *Jones v. Astrue*, 623 F.3d 1155, 1162 (7ᵗʰ Cir. 2010) (ALJ's mistaken finding that plaintiff temporarily avoided treatment did not undermine credibility determination).  As detailed above, the ALJ cited several other reasons for finding Powell's subjective complaints not entirely credible, including his daily activities, the lack of objective evidence to support the severity of Powell's complaints and Powell's own assessment of his abilities.  In addition, both of the agency physicians who reviewed Powell's records concluded that Powell could perform a range of light work; this evidence was not contradicted by any well-supported opinion to the contrary.

"It is only when the ALJ's determination lacks any explanation or support that we will declare it to be 'patently  wrong[.]'" *Elder*, 529 F.3d at 414 (citation and internal quotations omitted).  Here, the ALJ provided clear reasons, supported by evidence in the record, why he was finding Powell's statements not entirely credible.  Reviewing the ALJ's credibility determination deferentially, as I must, I find no basis to overturn it.

19

**ORDER**

IT IS ORDERED that the decision of the Commissioner of Social Security denying plaintiff Lewis Powell's application for a period of disability and disability insurance benefits under the Social Security Act is AFFIRMED.  The clerk of court is directed to enter judgment for defendant and close this case.

Entered this 5th day of December, 2016.

BY THE COURT:

/s/

STEPHEN L. CROCKER
Magistrate Judge